**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| KNOSSOS GLOBAL SYSTEMS, LLC | § | CIVIL ACTION NO. 2:25-cv-01177 |
| | § | |
| *Plaintiff* | § | |
| | § | **JURY TRIAL DEMANDED** |
| v. | § | |
| | § | |
| BLACKBERRY LIMITED, | § | |
| | § | |
| *Defendant.* | § | |
| | § | |

**DEFENDANT BLACKBERRY LIMITED'S
MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ................................................................................................. 1

II.   STATEMENT OF THE ISSUES.......................................................................... 1

III.   BACKGROUND ................................................................................................. 2

IV.   LEGAL STANDARD.......................................................................................... 3

V.   ARGUMENT....................................................................................................... 4

      A.    Claim 1 of the '410 Patent is Representative.......................................... 4

      B.    The Asserted Claims Are Directed to Patent-Ineligible Subject Matter................. 7

            1.    Alice Step One: The Claims Are Directed to the Abstract Idea of Sending and Managing Private Electronic Communications ................................... 8

            2.    Alice Step Two: The Claims Recite Non-Inventive Conventional Features and Generic, Result-Oriented Functional Limitations ............................. 12

      C.    Claim Construction And Discovery Are Unnecessary ......................................... 16

VI.   CONCLUSION.................................................................................................... 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Affinity Labs of Tex., LLC v. Amazon.com, Inc.*,
  838 F.3d 1266 (Fed. Cir. 2016)......................................................................................12

*AI Visualize, Inc. v. Nuance Commc'ns, Inc.*,
  97 F.4th 1371, 1381 (Fed. Cir. 2024) ...........................................................................15

*Alice Corp. Pty. v. CLS Bank Int'l*,
  573 U.S. 208 (2014)............................................................................................... *passim*

*Anand v. Ocwen Loan Servicing, LLC*,
  754 F.3d 195 (4th Cir. 2014) ...........................................................................................3

*Bancorp Servs., L.L.C. v. Sun Life Assurance Co. of Canada (US)*,
  687 F.3d 1266 (Fed. Cir. 2012)......................................................................................16

*Berkheimer v. HP Inc.*,
  881 F.3d 1360 (Fed. Cir. 2018)....................................................................................6, 7

*Bilski v. Kappos*,
  561 U.S. 593 (2010).........................................................................................................3

*Boom! Payments, Inc. v. Stripe, Inc.*,
  839 F. App'x 528 (Fed. Cir. 2021) ..................................................................................3

*ChargePoint, Inc. v. SemaConnect, Inc.*,
  920 F.3d 759 (Fed. Cir. 2019)..........................................................................................3

*Cisco Sys., Inc. v. Uniloc 2017 LLC*,
  813 F. App'x 495 (Fed. Cir. 2020) ...............................................................................3, 9

*Cleveland Clinic Found. v. True Health Diagnostics LLC*,
  859 F.3d 1352 (Fed. Cir. 2017).......................................................................................4

*Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*,
  776 F.3d 1343 (Fed. Cir. 2014)............................................................................... *passim*

*CyberSource Corp. v. Retail Decisions, Inc.*,
  654 F.3d 1366 (Fed. Cir. 2011).......................................................................................8

*Elec. Power Grp., LLC v. Alstom S.A.*,
  830 F.3d 1350 (Fed. Cir. 2016)..........................................................................7, 11, 12, 15

*Ericsson Inc. v. TCL Commc'n Tech. Holdings Ltd.*,
  955 F.3d 1317 (Fed. Cir. 2020)..................................................................................15

*Free Stream Media Corp. v. Alphonso Inc.*,
  996 F.3d 1355 (Fed. Cir. May 11, 2021) ...................................................................11

*Glasswall Solutions Ltd. v. Clearswift Ltd.*,
  754 F. App'x 996 (Fed. Cir. 2018) ...................................................................... 10-11

*Hawk Tech. Sys., LLC v. Castle Retail, LLC*,
  60 F.4th 1349 (Fed. Cir 2023) ....................................................................................7

*Intellectual Ventures I LLC v. Symantec Corp.*,
  838 F.3d 1307 (Fed. Cir. 2016)...............................................................................8, 10

*Interval Licensing LLC v. AOL, Inc.*,
  896 F.3d 1335 (Fed. Cir. 2018)..................................................................................15

*Loyalty Conversion Systems Corp. v. American Airlines, Inc.*,
  66 F. Supp. 3d. 829 (E.D. Tex. 2014).................................................................. 11-12

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
  566 U.S. 66 (2012)........................................................................................................7

*Phoenix Licensing, L.L.C. v. Consumer Cellular, Inc.*,
  2:16-cv-152-JRG-RSP, 2017 WL 1065938 (E.D. Tex. Mar. 8, 2017) ......................6

*RecogniCorp, LLC v. Nintendo Co., Ltd.*,
  855 F.3d 1322 (Fed. Cir. 2017).............................................................................. 7-8

*Sanderling Management Ltd. v. Snap Inc.*,
  65 F.4th 698 (Fed. Cir. 2023) ....................................................................................17

*SAP Am. Inc. v. InvestPic, LLC*,
  898 F.3d 1161 (Fed. Cir. 2018)...............................................................................3, 15

*Secured Mail Sols. LLC v. Universal Wilde, Inc.*,
  873 F.3d 905 (Fed. Cir. 2017)..................................................................4, 9, 10, 13

*Sensormatic Elecs., LLC v. Wyze Labs, Inc.*,
  No. 2020-2320, 2021 WL 2944838 (Fed. Cir. July 14, 2021).....................................6

*Simio, LLC v. Flexsim Software Prods., Inc.*,
  983 F.3d 1353 (Fed. Cir. 2020)............................................................... 3-4, 9, 15

*Symbology Innovations, LLC v. Dexcom, Inc.*,
  742 F. Supp. 3d 702 (E.D. Tex. 2024)......................................................................17

*Torus Ventures LLC v. Cawley Partners, LLC*,
    2025 WL 1799327 (E.D. Tex. June 30, 2025) .............................................................. 11, 14-15

*Two-Way Media Ltd. v. Comcast Cable Commc'ns*,
    LLC, 874 F.3d 1329 (Fed. Cir. 2017) ............................................................................11, 14

*Ultramercial, Inc. v. Hulu, LLC*,
    772 F.3d 709 (Fed. Cir. 2014) (Mayer, J., concurring) ...................................................3, 16

**Statutes**

35 U.S.C. § 101 ........................................................................................................ *passim*

**Other Authorities**

Fed. R. Civ. P. 12(b)(6) ................................................................................................1, 3

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant BlackBerry Limited ("BlackBerry") moves to dismiss Plaintiff's Amended Complaint in its entirety because the asserted patent claims are patent-ineligible under 35 U.S.C. § 101.

## I.    INTRODUCTION

Plaintiff Knossos Global Systems, LLC ("Knossos") alleges that BlackBerry Limited ("BlackBerry") infringes U.S. Patent No. 8,819,410 (the "Asserted Patent") through its BlackBerry Messenger Enterprise and BlackBerry Work products.  Dkt. No. 1 at ¶¶ 17–20, 26–28.  Knossos asserts that these products practice claim 1 of the '410 Patent by enabling encrypted electronic communications within a "private domain" using public-key and symmetric cryptography.  *Id.* The '410 Patent, however, does not claim a new encryption technique, a new key-exchange protocol, or any improvement to cryptographic security or computer networking.  It claims only the abstract idea of sending and managing private electronic communications using conventional encryption and generic computing components.  That is not patent-eligible subject matter.

The claims recite no cryptographic algorithm, no novel data structure, and no technical mechanism for improving computer functionality or network security.  They merely instruct a generic server to (i) receive messages, (ii) determine whether recipients are members of a closed group, (iii) encrypt information using well-known techniques, and (iv) route the communications accordingly.  Courts have repeatedly held that such claims are abstract and ineligible under Section 101, even when framed in the language of encryption or cybersecurity.  Because the asserted claims are directed to an abstract idea and contain no inventive concept, the Amended Complaint should be dismissed with prejudice.

## II.    STATEMENT OF THE ISSUES

The issue presented is whether the Court should dismiss Knossos' Amended Complaint in

its entirety on the ground that the claims of the Asserted Patent are directed to patent-ineligible subject matter under 35 U.S.C. § 101.

## III.    BACKGROUND

The '410 Patent generally relates to electronic information exchange using "private addresses and domains."  '410 Patent at 1:13-15.  The patent purports to address perceived shortcomings of conventional electronic mail systems, such as spam, spoofing, and the public visibility of email addresses, by limiting electronic communications to members of a private domain.  *Id.* at 1:44-50; 2:41-49.  As described in the specification, the claimed system requires users to register with a private domain and permits electronic information to be transmitted only among registered members.  *Id.* at 5:16-20; 6:65-7:26.  Communications are encrypted using a symmetric cryptographic key generated for each transmission, and that symmetric key is itself encrypted using a public cryptographic key associated with the intended recipient.  *Id.* at 7:27-41; 12:30-34.  The encrypted information is then transmitted over an electronic network, such as the internet, and retrieved by the recipient.  *Id.* at 7:16-25; 9:37-45.

The patent does not claim to invent any cryptographic algorithm, encryption technique, or networking technology.  Rather, it expressly relies on well-known public-key and symmetric encryption methods, conventional servers, and standard electronic networks without describing how any cryptographic operation is performed, how keys are generated or managed in a novel way, or how security is improved relative to conventional systems.  *Id.* at 5:23-35; 7:27-41; 9:5-14.  In essence, the asserted technology merely receives and organizes electronic communications by associating them with registered users of a closed group and relays encrypted messages through a conventional intermediary server.  Neither the claims nor the specification identifies any new or inventive mechanism for encryption, key exchange, access control, or message routing; they

instead describe the desired results of private, encrypted communication using generic computers and established cryptographic practices. These purely functional descriptions confirm that the '410 Patent does not claim a technological improvement, but rather the abstract idea of private message exchange implemented with conventional tools.

## IV.    LEGAL STANDARD

Patentability under 35 U.S.C. § 101 is a "threshold" legal issue, *Bilski v. Kappos*, 561 U.S. 593, 602 (2010), and thus "may be, and frequently has been, resolved on a Rule 12(b)(6) or (c) motion." *SAP Am. Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1166 (Fed. Cir. 2018). Resolving eligibility on the pleadings minimizes "expenditure of time and money by the parties and the court," guards against "vexatious infringement suits," and "protects the public" from patents that improperly monopolize the public store of knowledge. *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 719 (Fed. Cir. 2014) (Mayer, J., concurring) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007)). Dismissal at the Rule 12(b)(6) stage should be granted accordingly where "'there are no factual allegations that, taken as true, prevent resolving the [patent] eligibility question as a matter of law.'" *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 765 (Fed. Cir. 2019) (citation omitted).

Although the Section 101 inquiry may occasionally involve underlying issues of fact, "conclusory statements regarding eligibility . . . are not factual allegations" and are disregarded. *Cisco Sys., Inc. v. Uniloc 2017 LLC*, 813 F. App'x 495, 498-99 (Fed. Cir. 2020).[1] Thus, "[a] statement that a feature 'improves the functioning and operations of the computer' is, by itself,

---

[1] *Accord Boom! Payments, Inc. v. Stripe, Inc.*, 839 F. App'x 528, 533 (Fed. Cir. 2021) (courts "disregard conclusory statements when evaluating a complaint under Rule 12(b)(6)"); *Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014) ("We do not, however, 'accept as true a legal conclusion couched as a factual allegation.'") (citation omitted).

conclusory" and irrelevant to the eligibility determination.  *Simio, LLC v. Flexsim Software Prods., Inc.*, 983 F.3d 1353, 1365 (Fed. Cir. 2020).  Likewise, a plaintiff may not manufacture a factual dispute simply by pleading that the claim limitations "involve more than performance of well-understood, routine, and conventional activities previously known to the industry."  *Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*, 776 F.3d 1343, 1347-48 (Fed. Cir. 2014) (internal alterations omitted).  Finally, a court "need not accept as true allegations that contradict matters properly subject to judicial notice or by exhibit, such as the claims and the patent specification."  *Secured Mail Sols. LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 913 (Fed. Cir. 2017) (cleaned up).

## V.    ARGUMENT

### A.    Claim 1 of the '410 Patent is Representative

Where claims are "substantially similar and linked to the same" ineligible concept, it is proper to treat a single claim as representative.  *Cleveland Clinic Found. v. True Health Diagnostics LLC*, 859 F.3d 1352, 1360 (Fed. Cir. 2017) (internal quotation marks omitted); *see also Content Extraction*, 776 F.3d at 1348.  Knossos accuses BlackBerry of infringing "at least claim 1 of the '410 patent."  Am. Compl. ¶63.  Claim 1 is substantially the same as, and is representative of, the claims of the Asserted Patent.  It reads:

1.  A method comprising:

> registering a sender to enable the sender to access services of a private domain in order to allow the sender to use the private domain for electronic information transmissions between members of the private domain;

> receiving, at a server associated with the private domain, data from the sender indicating that the sender is initiating the transmission of electronic information in the private domain to a recipient;

> determining, at the server associated with the private domain, whether the recipient is a member of the private domain by examining a record of members of the private domain;

providing to the sender, from the server associated with the private domain, a public cryptographic key associated with the recipient when the recipient is determined to be a member of the private domain;

receiving, at the server associated with the private domain, electronic information to be delivered to a recipient from the sender, the electronic information comprises at least a portion of the electronic information encrypted by a symmetric cryptographic key that is unique for the transmission of the electronic information, and wherein the electronic information further comprises a security package that contains an encrypted version of the symmetric cryptographic key, the encrypted version of the symmetric cryptographic key encrypted by the sender using the public cryptographic key of the recipient to enable the recipient to decrypt the symmetric cryptographic key and then decrypt the at least a portion of the encrypted electronic information; and

transmitting the electronic information, with the security package, over an electronic network to the recipient.

The dependent claims do not add any technological feature that alters the patent-eligibility analysis. Instead, they merely append routine and conventional limitations to the abstract idea recited in claim 1. For example, dependent claims 2-4 merely specify that the electronic network is the Internet or another publicly accessible network and that the electronic information is an email message. *Id.*, Claims 2-4. Dependent claims 14-18 merely specify that the system performs commonplace administrative functions such as sender authentication, invitation-based registration, message acknowledgment, or rate limiting. *See id.*, Claims 14–18. Other dependent claims recite variations on address formatting (including the use of a private top-level domain), message distribution lists, and storage or retrieval of encrypted information from a server—each of which reflects standard design choices in electronic messaging systems. *See id.*, Claims 5–13, 19. The lone other independent claim, claim 20, merely claims a non-transitory computer readable medium providing instructions for a processing system to perform the method recited in claim 1 and therefore, does not include any limitations impacting the patent-eligibility analysis.

None of these limitations recite a new cryptographic technique, a new routing protocol, or any improvement to the functioning of a computer or network. Nor do they meaningfully restrict

5

the scope of claim 1 beyond applying the same abstract idea in routine technological contexts. Because the dependent claims merely apply the abstract concept of private, encrypted messaging using conventional components, they rise or fall with claim 1.  Claim 1 is therefore representative for purposes of the § 101 analysis.  *See Content Extraction*, 776 F.3d at 1348; *Phoenix Licensing, L.L.C. v. Consumer Cellular, Inc.*, 2:16-cv-152-JRG-RSP, 2017 WL 1065938, at *8–9 (E.D. Tex. Mar. 8, 2017); *Sensormatic Elecs., LLC v. Wyze Labs, Inc.*, No. 2020-2320, 2021 WL 2944838, at *4 (Fed. Cir. July 14, 2021) (affirming district court's invalidation of 25 asserted claims, treating one claim as representative); *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1365 (Fed. Cir. 2018) ("Courts may treat a claim as representative" where there is no "meaningful argument for the distinctive significance of any claim limitations not found in the representative claim.").

Knossos' Amended Complaint alleges that claim 1 cannot be treated as representative because the dependent claims allegedly "recite materially different routing structures, database-management operations, conditional transmission logic, and server-mediated control mechanisms."  Am. Compl. ¶49.  That argument does not withstand scrutiny.  Although the Amended Complaint identifies additional claim elements in the dependent claims—such as private top-level domain address structures (claims 5–7), conditional routing based on address type (claim 9), server-mediated storage and retrieval (claim 10), and temporary database entries for non-members (claim 15)—these limitations do not alter the ineligibility analysis.  As discussed above, each of those features simply implements the same abstract idea using conventional address structures, standard database operations, and ordinary server-side logic.  The question under *Alice* is not whether claims differ in their functional details, but whether any additional element supplies an inventive concept beyond the abstract idea.  None of the dependent claim limitations identified in the Amended Complaint recites a new cryptographic mechanism, an unconventional routing

6

protocol, or a novel database architecture. Routing by address type, creating temporary database entries, and storing encrypted messages for server-mediated retrieval are each conventional operations in electronic messaging systems. The mere recitation of additional conventional steps does not transform abstract claiming into patent-eligible subject matter, and provides no basis to avoid treating claim 1 as representative. *See Content Extraction*, 776 F.3d at 1348; *Berkheimer*, 881 F.3d at 1365.

### B.     The Asserted Claims Are Directed to Patent-Ineligible Subject Matter

Section 101 provides that "[w]hoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." 35 U.S.C. § 101. However, "[l]aws of nature, natural phenomena, and abstract ideas are not patentable." *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014) (cleaned up). These categories are not patent-eligible because "they are the basic tools of scientific and technological work" that are "free to all men and reserved exclusively to none." *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 71 (2012) (cleaned up). Under *Alice*, a claim falls outside Section 101 if (1) it is directed to an abstract idea, and (2) lacks an inventive concept sufficient to transform the claim into patent eligible subject matter. *Hawk Tech. Sys., LLC v. Castle Retail, LLC*, 60 F.4th 1349, 1356 (Fed. Cir 2023) (citation omitted).

At *Alice* step one, courts "must first determine whether the claims at issue are directed to a patent-ineligible concept." *Alice, 573 U.S.* at 218. This requires "looking at the 'focus' of the claims, their 'character as a whole,'" to determine if they are directed to excluded subject matter. *See*, *e.g.*, *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016). "The inquiry often is whether the claims are directed to 'a specific means or method' for improving

7

technology or whether they are simply directed to an abstract end-result." *RecogniCorp, LLC v. Nintendo Co., Ltd.*, 855 F.3d 1322, 1326 (Fed. Cir. 2017) (citation omitted).  A claim that can be performed mentally or analogized to brick-and-mortar concepts likely is directed to an abstract idea.  *See, e.g.*, *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1371 (Fed. Cir. 2011) ("[M]ethods which can be performed mentally, or which are equivalent of human mental work, are unpatentable abstract ideas . . . ."); *Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1314 (Fed. Cir. 2016) (analogizing abstract claim to brick-and-mortar post office).

At *Alice* step two, after removing the abstract idea from the claims, courts search for a remaining "'inventive concept' sufficient to 'transform' the claimed abstract idea into a patent-eligible application."  *Alice*, 573 U.S. at 221 (citation omitted).  There is nothing inventive about implementing an abstract idea using "'well-understood, routine, conventional activit[ies]' previously known to the industry."  *Id.* at 225 (citation omitted).  Likewise, limiting a claim to a particular technological environment does not supply an inventive concept to an otherwise abstract claim.  *Content Extraction*, 776 F.3d at 1348-49.

### 1.  *Alice Step One: The Claims Are Directed to the Abstract Idea of Sending and Managing Private Electronic Communications*

The claims of the '410 Patent are not directed to an improvement in encryption, computer networking, or computer functionality.  Instead, they are directed to the abstract idea of sending and managing private electronic communications using conventional encryption and ordinary network infrastructure.  As the specification explains, the system operates by registering users with a "private domain," determining whether an intended recipient is a member of that domain, encrypting electronic information, and transmitting the encrypted information over a conventional electronic network.  '410 Patent at 5:16-20; 6:65-7:26; 7:27-41; 12:30-34; 9:37-45.  The encryption itself relies on well-known public-key and symmetric cryptographic techniques, which are invoked

8

for their ordinary purpose of protecting message confidentiality. *Id.* at 5:23-35; 7:27-41; 9:5-14.

Knossos' Amended Complaint attempts to recast the '410 Patent as claiming a "specific server-associated private-domain transmission architecture" that solves identified technical problems in publicly routable email systems. Am. Compl. ¶¶53–55. But these assertions are exactly the kind of conclusory eligibility allegations that courts are instructed to disregard. A plaintiff cannot manufacture a factual dispute about patent eligibility by dressing up a patent's functional description in the language of "technical solutions" and "architectural constraints." *Cisco Sys.*, 813 F. App'x at 498–99 ("conclusory statements regarding eligibility . . . are not factual allegations"); *Simio, LLC*, 983 F.3d at 1365 (a bare statement that a feature "improves the functioning and operations of the computer" is "by itself, conclusory").

The Amended Complaint identifies nothing in the claims or specification that explains *how* any asserted technical benefit is achieved beyond the abstract, functional steps recited in the claims themselves. The Amended Complaint recites the same claim language—"server-associated private domain," "transmission-specific symmetric key generation," "security-package formation," and "server-mediated membership determination"—and labels it a "technical solution." But such conclusory labels are insufficient alone to survive a motion to dismiss. The specification confirms that the claimed functions can be performed using "a variety of encryption techniques" including well-known RSA and PGP methods, any programming language, and conventional server infrastructure. '410 Patent at 4:14–20, 4:34–39. That is a concession of conventionality, not an inventive contribution. Where, as here, the specification itself discloses that the claimed functions can be implemented with any off-the-shelf tools, the claims are abstract regardless of how they are characterized in a complaint. *See Secured Mail*, 873 F.3d at 913 (courts "need not accept as true allegations that contradict matters properly subject to judicial notice or by

9

exhibit, such as the claims and the patent specification").

The Federal Circuit has repeatedly held that such result-oriented claims directed to organizing, transmitting, or securing information are abstract.  For example, in *Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1314, the court held that claims directed to filtering and screening data for malicious content were abstract, even though they arose in the context of computer security.  *Id.* at 1314.  The court explained that merely invoking computer security does not transform abstract information handling into a technological improvement.  *Id.*

Similarly, in *Secured Mail*, the court held that claims directed to methods of securing communications by affixing identifiers to the communications were abstract because they merely recited conventional steps for their intended purpose.  873 F.3d at 910–12.  The court expressly rejected the argument that "improv[ing] on the existing process both by reliably identifying the sender of the mail object and by permitting the sender to create a bi-directional communication channel between the sender and recipient of the mail object" was a patent-eligible improvement to computer functionality.  *Id.*  In rejecting this argument, the court noted that the claims did not recite specific details of the communication identifier or the equipment for generating and processing it.  *Id.*  ("The claims state that various identifiers are affixed to a mail object, stored in a database, scanned from the mail object, and retrieved from the database.  No special rules or details of the computers, databases, printers, or scanners are recited.").  The same reasoning applies here, as the claims of the '410 Patent do not recite the specific details of the cryptographic keys or the equipment for generating and processing the same.

The '410 Patent's discussion of encryption does not change this analysis.  Courts have consistently rejected the argument that the mere inclusion of encryption or security concepts renders claims patent-eligible.  In *Glasswall Solutions Ltd. v. Clearswift Ltd.*, 754 F. App'x 996,

10

(Fed. Cir. 2018), the Federal Circuit held that claims directed to virus protection and file inspection were abstract where they lacked any specific technical mechanism for achieving the purported security benefits. *Id.* at 998. And in *Torus Ventures LLC v. Cawley Partners, LLC*, 2025 WL 1799327 (E.D. Tex. June 30, 2025), this Court recently held claims abstract where they recited encrypting data and associating it with an algorithm without disclosing how the encryption or association was performed. *Id.* at *5. In holding the claims were directed to an abstract idea, the Court emphasized that the claims recited abstract steps of "'protecting,' 'encrypting,' and 'associating' using an 'algorithm'" without "provid[ing] any specific method of how the bit streams are encrypted or how the encrypted data is associated with its decryption algorithm." *Id.*

Finally, the claims' reliance on functional, result-oriented language underscores their abstract character. The claims here are drafted entirely in functional, result-oriented terms— "receiving," "determining," "providing," "encrypting," and "sending"—without explaining how any of those functions are performed in a non-conventional way. That is precisely the kind of result-oriented claiming the Federal Circuit and the Court has held to be abstract. *See Two-Way Media Ltd. v. Comcast Cable Commc'ns*, LLC, 874 F.3d 1329, 1338 (Fed. Cir. 2017); *Elec. Power Grp.*, 830 F.3d at 1351; *Free Stream Media Corp. v. Alphonso Inc.*, 996 F.3d 1355, 1363 (Fed. Cir. May 11, 2021) ("a relevant inquiry at *Alice* Step 1 is 'whether the claims in the[] patent[] focus on a *specific means or method* that improves the relevant technology or are instead directed to a *result or effect that itself is the abstract idea* and merely invoke generic processes and machinery'") (citation omitted; alterations in original; emphasis added); *Torus Ventures*, 2025 WL 1799327, at *2 (E.D. Tex. June 30, 2025); *Loyalty Conversion Systems Corp. v. American Airlines, Inc.*, 66 F. Supp. 3d. 829, 843 (E.D. Tex. 2014) (holding ineligible claims that were "largely functional in nature [and did] not provide any significant description of the particular means by

11

which the various recited functions are performed"). Indeed, as the Federal Circuit has made clear, claims that "do no more than describe a desired function or outcome, without providing any limiting detail that confines the claim to a particular solution," are directed to an abstract idea. *Affinity Labs of Tex., LLC v. Amazon.com, Inc.*, 838 F.3d 1266, 1269 (Fed. Cir. 2016).

Viewed as a whole, the '410 Patent claims nothing more than the result of private, encrypted message exchange implemented using generic computers and established cryptographic practices. That focus places the claims squarely within the category of abstract ideas identified in *Electric Power Group*—the collection, processing, and transmission of information using conventional tools. 830 F.3d at 1353–54. The claims therefore are directed to an abstract idea under *Alice* step one.

### 2. *Alice Step Two: The Claims Recite Non-Inventive Conventional Features and Generic, Result-Oriented Functional Limitations*

At *Alice* step two, the Court must first remove the abstract idea from the claim, and then "determine whether the ***additional*** elements" add an inventive concept sufficient to transform the claim. *Alice*, 573 U.S. at 217 (emphasis added). Once the abstract idea of sending and managing private electronic communications is stripped away, nothing inventive remains.

Knossos' Amended Complaint alleges that even if individual claim elements are conventional, the claims recite a "nonconventional and coordinated arrangement of technical mechanisms" that was not "routine, conventional, or generic" when combined. Am. Compl. ¶¶57–58. That argument fails for two independent reasons. First, the combination argument is itself conclusory. The Amended Complaint does not identify any concrete factual basis for the assertion that combining registration-based participation controls, server-mediated membership determination, symmetric key generation, public-key encrypted security packages, and private-domain routing was unconventional at the time of the invention. It simply re-describes the claim

12

elements using superlatives like "coordinated," "specific," and "particular" and declares that the combination was nonroutine.  That is precisely the kind of conclusory assertion that courts disregard at the Rule 12(b)(6) stage.  *Cisco Sys.*, 813 F. App'x at 498–99 ("conclusory statements regarding eligibility . . . are not factual allegations").

Second, and more fundamentally, the combination argument is squarely contradicted by the patent's own specification.  The Amended Complaint argues that the patent combines known techniques "in a manner that was not routine, conventional, or generic."  Am. Compl. ¶58.  But the specification says the exact opposite.  It expressly states that the claimed system may use "a variety of encryption techniques" including well-known RSA and PGP methods, may be implemented in any programming language, may run on generic server farms and conventional networks, and makes no claim to a novel cryptographic algorithm, routing protocol, or database architecture.  '410 Patent at 4:14–20, 4:34–39, 5:23–37.  A claimed "combination" of elements that the patentee itself described as conventional, interchangeable, and off-the-shelf cannot supply an inventive concept under *Alice* step two.  The Court need not "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit, such as the claims and the patent specification."  *Secured Mail*, 873 F.3d at 913.

As the specification confirms, the asserted claims consist of conventional computer components performing their ordinary, expected functions.  The claims rely on generic servers, operate over standard electronic networks, and use public-key and symmetric encryption techniques that were well known long before the priority date.  The specification expressly states that the invention is "not described with reference to any particular programming language" and that "a variety of programming languages may be used to implement the teachings of the invention."  '410 Patent at 4:14-20.  The specification makes the same concession with respect to

encryption, explaining that the claimed encryption can be accomplished using "a variety of encryption techniques," including well-known symmetric and public-key methods such as RSA and PGP. *Id.* at 4:34-39; 7:27-42. Thus, the patent does not claim a new encryption algorithm, a novel key-generation process, or an unconventional key-management scheme. Instead, it treats encryption as interchangeable and off-the-shelf.

The claims similarly do not recite any unconventional network or system architecture. The specification explains that the invention is "not inherently related to any particular computer or other apparatus" and may be implemented using generic "server farms," conventional databases, and standard Internet or intranet environments operating over common protocols such as TCP/IP. *Id.* at 4:9-14; 5:33-37; 6:28-48. The claimed "private domain" is merely a private network that may be hosted on any server configuration, and routing is performed using ordinary domain-based techniques. *Id.* at 6:65-67; 7:12-26. These disclosures confirm that the patent does not improve computer networking; it merely uses conventional infrastructure as expected. This is fatal under Section 101.

Courts have repeatedly held that functional claiming on generic computer components cannot supply an inventive concept. In *Two-Way Media*, the Federal Circuit held claims ineligible where they recited high-level functional steps, such as converting, routing, and controlling information, without explaining how those steps were technologically implemented. 874 F.3d at 1337–38. Similarly, in *Torus*, this Court held that "encrypting data" and "associating the new encryption with a means for decryption," performed using "generic computer parts and conventional methods," amounted to nothing more than the abstract idea itself. *Torus Ventures*, 2025 WL 1799327, at *7-9. The claims here likewise do no more than register users, determine membership in a private domain, encrypt messages using conventional techniques, and transmit

those messages through generic servers, without reciting any algorithm, data structure, or architectural change that improves computer operation or network performance. This is insufficient under this Court's and the Federal Circuit's precedent. *AI Visualize, Inc. v. Nuance Commc'ns, Inc.*, 97 F.4th 1371, 1381 (Fed. Cir. 2024) ("Merely reciting an abstract idea performed on a set of generic computer components . . . would not contain an inventive concept."); *see also Ericsson Inc. v. TCL Commc'n Tech. Holdings Ltd.*, 955 F.3d 1317, 1330–31 (Fed. Cir. 2020) (citation omitted); *InvestPic*, 898 F.3d at 1167–68.

Critically, the claims never explain *how* any purported technical objective is achieved. They do not identify what cryptographic keys are used, how any such keys are generated, or how conversations are mapped or preserved. They simply state that encryption, association, storage, routing, and retrieval occur. Such "essentially result-focused, functional" claim language is a recurring feature of claims held ineligible under Section 101. *Elec. Power Grp.*, 830 F.3d at 1356; *see also Interval Licensing LLC v. AOL, Inc.*, 896 F.3d 1335, 1345 (Fed. Cir. 2018). The ordered combination of elements fares no better. The Amended Complaint contends that no prior system combined the claimed elements "in the manner recited in the claims." Am. Compl. ¶60. But that assertion is conclusory and unsupported by any specific factual allegation. The Amended Complaint points to no prior art, no expert opinion, no prosecution history, and no objective indicia of non-obviousness. It simply asserts, in generic terms, that the combination was unique. Such bare assertions of nonconventionality do not create a factual dispute sufficient to defeat a motion to dismiss. *Simio*, 983 F.3d at 1365. Moreover, the premise of Paragraph 60 collapses under examination: if, as the specification states, the claimed system can be implemented using any encryption technique, any programming language, any server farm, and standard Internet protocols, then there can be no plausible basis to allege that the overall combination was

15

nonconventional. Combining routine steps—user registration, membership verification, encryption using known techniques, identifier-based routing, and message transmission over conventional networks—produces only predictable results.

In short, the '410 Patent's specification confirms that the claims lack an inventive concept. By conceding that the system can be implemented using any programming language, any encryption technique, and any server or domain configuration operating over standard networks, the patent forecloses any claim to a patent-eligible technological improvement. The Amended Complaint's contrary assertions—that the claimed combination was "nonconventional," "not routine," and "not previously employed together"—are bare legal conclusions contradicted by the patent's own disclosures and therefore cannot stave off dismissal. Whether viewed element-by-element or as an ordered combination, the claims add nothing beyond the abstract idea itself. The claims thus fail *Alice*'s second prong as well and are therefore unpatentable.

## C.    Claim Construction And Discovery Are Unnecessary[2]

Claim construction is unnecessary for this Court to rule on the present motion to dismiss. First, the Federal Circuit has repeatedly stated that claim construction is not an absolute requirement for determining patent eligibility under Section 101. *See, e.g.*, *Content Extraction*, 776 F.3d at 1349; *Ultramercial*, 772 F.3d, at 714–15; *Bancorp Servs., L.L.C. v. Sun Life Assurance Co. of Canada (US)*, 687 F.3d 1266, 1273–74 (Fed. Cir. 2012).

Second, no issue has been raised regarding specific definitions that should be applied to the otherwise routine and conventional terms used throughout the Asserted Patent. And, even if

---

[2]Pursuant to the Court's Standing Order regarding Section 101 motions, the parties have conferred regarding the need for claim construction before resolution of this motion to dismiss and disagree about the need for it. The parties filed a joint letter regarding their respective Section 101 claim construction positions on February 27, 2026. Dkt. 18.

there were some differing opinions as to how certain terms should be construed, given the reasons discussed herein, the claims would be "directed to ineligible . . . subject matter under all plausible constructions . . . [hence] the court need not engage in claim construction before resolving" the present § 101 motion. *See Sanderling Management Ltd. v. Snap Inc.*, 65 F.4th 698, 703–04 (Fed. Cir. 2023).

Finally, as this Court has previously found, no construction of the claims is required when the "'basic character of the claimed subject matter' in dispute is clearly evident to the Court." *Symbology Innovations, LLC v. Dexcom, Inc.*, 742 F. Supp. 3d 702, 707 (E.D. Tex. 2024) (quoting *Wireless Media Innovations, LLC v. Maher Terminals, LLC*, 100 F. Supp. 3d 405, 410 (D.N.J. 2015)), *aff'd*, 636 Fed. App'x. 1014 (Fed. Cir. 2016). Given the claims of the Asserted Patent recite nothing more than conventional computers and components aiding in the performance of conventional functions, this Court can understand the basic character of the claims of the Asserted Patent at this stage of the proceedings.

## VI.    **CONCLUSION**

The claims of the Asserted Patent are directed to an abstract idea implemented using generic computer components, and controlling precedent confirms that such claims are ineligible under Section 101. Accordingly, BlackBerry respectfully requests that the Court grant its Motion to Dismiss the Amended Complaint with prejudice.

Dated:  March 17, 2026

Respectfully submitted,

*/s/ Jason W. Cook*

Jason W. Cook
Lead Attorney
McGuireWoods LLP
2601 Olive Street
Suite 2100
Dallas, TX 75201
Telephone: 214-932-6400
Facsimile: 214-273-7483
jcook@mcguirewoods.com

*Counsel for Defendant BlackBerry Limited*

18

## CERTIFICATE OF COMPLIANCE WITH THE COURT'S
## 35 U.S.C. § 101 MOTION PRACTICE ORDER

_____          Parties **agree** that prior claim construction is not needed to inform the

Court's analysis as to patentability.


X\_\_\_\_          The parties **disagree** on whether prior claim construction is not needed to

inform the Court's analysis as to patentability

*/s/ Jason W. Cook*_____
Jason W. Cook

## CERTIFICATE OF SERVICE

I hereby certify that on March 17, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing to all counsel of record.

By:  */s/ Jason W. Cook*