**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| KNOSSOS GLOBAL SYSTEMS, LLC | § | CIVIL ACTION NO. 2:25-cv-01177 |
| | § | |
| *Plaintiff* | § | |
| | § | **JURY TRIAL DEMANDED** |
| v. | § | |
| | § | |
| BLACKBERRY LIMITED, | § | |
| | § | |
| *Defendant.* | § | |
| | § | |

**DEFENDANT BLACKBERRY LIMITED'S REPLY BRIEF IN SUPPORT OF ITS**
**MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

# TABLE OF CONTENTS

**Page**

I.     ARGUMENT ......................................................................................................... 1

    A.     Knossos's Opposition Confirms the Claims are Directed to an Abstract Idea ....... 1

        1.     Knossos's Architecture Argument Repackages Functional Results ........... 1

        2.     Knossos Relies on Inapposite Authority ...................................................... 2

        3.     The Private Top-Level Domain Does Not Save the Claims ........................ 5

    B.     The Claims Contain No Inventive Concept Sufficient to Satisfy *Alice* Step Two ........................................................................................................ 5

        1.     The Specification Forecloses Knossos's Combination Argument .............. 5

        2.     Berkheimer Does Not Bar Resolution Here ................................................. 7

    C.     The Dependent Claims Do Not Alter the Eligibility Analysis .............................. 8

    D.     Claim Construction And Discovery Are Unnecessary .......................................... 8

II.     CONCLUSION .................................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alice Corp. Pty. v. CLS Bank Int'l,*
573 U.S. 208 (2014)..................................................................................................6, 7

*Ancora Techs., Inc. v. HTC Am., Inc.,*
908 F.3d 1343 (Fed. Cir. 2018)........................................................................................3

*BASCOM Global Internet Servs., Inc. v. AT&T Mobility LLC,*
827 F.3d 1341 (Fed. Cir. 2016).....................................................................................3, 5

*Berkheimer v. HP Inc.,*
881 F.3d 1360 (Fed. Cir. 2018).........................................................................................7

*Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.,*
776 F.3d 1343 (Fed. Cir. 2014).......................................................................................7, 8

*Enfish, LLC v. Microsoft Corp.,*
822 F.3d 1327 (Fed. Cir. 2016).........................................................................................2

*Finjan, Inc. v. Blue Coat Sys., Inc.,*
879 F.3d 1299 (Fed. Cir. 2018).........................................................................................4

*Integrated Tech. Sys., Inc. v. First Internet Bank of Indiana,*
2017 WL 617673 (E.D. Tex. Feb. 15, 2017) ....................................................................6

*Magee v. Life Ins. Co. of N. Am.,*
261 F. Supp. 2d 738 (S.D. Tex. 2003) .............................................................................10

*Mark I Marketing Corp. v. R.R. Donnelley & Sons Co.,*
66 F.3d 285 (Fed. Cir. 1995).............................................................................................6

*MyMail, Ltd. v. ooVoo, LLC,*
934 F.3d 1373 (Fed. Cir. 2019).........................................................................................9

*RecogniCorp, LLC v. Nintendo Co., Ltd.,*
855 F.3d 1322 (Fed. Cir. 2017).........................................................................................1

*Sanderling Mgmt. Ltd. v. Snap Inc.,*
65 F.4th 698 (Fed. Cir. 2023) ...........................................................................................8

*Secured Mail Sols. LLC v. Universal Wilde, Inc.,*
873 F.3d 905 (Fed. Cir. 2017)...................................................................................2, 8, 10

*Simio, LLC v. Flexsim Software Prods., Inc.*,
  983 F.3d 1353 (Fed. Cir. 2020)......................................................................................7

*SRI Int'l, Inc. v. Cisco Sys., Inc.*,
  930 F.3d 1295 (Fed. Cir. 2019)................................................................................... 4-5

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
  874 F.3d 1329 (Fed. Cir. 2017)................................................................................... 1-2

**Other Authorities**

Rule 12(b)(6)...........................................................................................................................7

Knossos's Opposition confirms what BlackBerry's Motion demonstrated: the '410 patent claims the *result* of private, encrypted electronic messaging, not any particular technical means of achieving it. Rather than identifying specific technical mechanisms in the claims that are unconventional, Knossos repackages the same abstract functions—registering users, verifying membership, encrypting messages, and routing them through a server—using labels like "private-domain transmission architecture" and "per-message symmetric key." Labels do not transform abstract claiming into patent-eligible subject matter. The Opposition also fails to distinguish BlackBerry's authorities and cannot overcome the specification's own concession that every component of the claimed system is interchangeable, off-the-shelf, and conventional. The Motion should be granted.

## I.    ARGUMENT

### A.    Knossos's Opposition Confirms the Claims are Directed to an Abstract Idea

The central question at *Alice* Step One is whether the claims "focus on a specific means or method that improves the relevant technology" or merely claim "a result or effect" using conventional tools. *RecogniCorp, LLC v. Nintendo Co., Ltd.*, 855 F.3d 1322, 1326 (Fed. Cir. 2017). The claims of the '410 patent do the latter.

#### 1.    *Knossos's Architecture Argument Repackages Functional Results*

Knossos argues that the claims recite a "specific technical architecture" comprising four structural elements. Opp. at 4–5. But the "architecture" Knossos describes is nothing more than the abstract idea restated step by step: (1) generate a symmetric key per message; (2) encrypt content with that key; (3) wrap the key in the recipient's public key; and (4) route the message through a server. These are not *technical means*—they are *functional results*. The claims say what happens, not how. *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1338

1

(Fed. Cir. 2017) (claims directed to high-level functional steps of "converting, routing, controlling" information without technical implementation are abstract).

The specification is dispositive on this point. It expressly discloses that the claimed encryption can be accomplished using "a variety of encryption techniques" including well-known RSA and PGP methods, that the system is "not inherently related to any particular computer or other apparatus," and that it may be implemented "in any programming language" using "server farms" and standard network infrastructure. '410 Patent at 4:9–20, 4:34–39, 5:23–37. Where the specification itself characterizes each claimed component as interchangeable and off-the-shelf, no amount of architectural labeling in the opposition brief can manufacture a technical improvement. *Secured Mail Sols. LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 913 (Fed. Cir. 2017) (courts need not "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit, such as the claims and the patent specification").

### 2.    *Knossos Relies on Inapposite Authority*

Knossos argues that the '410 patent is analogous to *Enfish* because, like the self-referential database table upheld there, the patent's private-domain transmission architecture constitutes a specific improvement to how computers operate—namely, by modifying routing at the network infrastructure level to create a domain that is structurally inaccessible from the public Internet. Opp. at 5–6. The analogy fails. *Enfish* held claims patent-eligible because they recited a *specific data structure*—a novel way of organizing data in memory that improved database performance. *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1337 (Fed. Cir. 2016). The '410 patent claims no novel data structure. It claims that a "security package" contains an encrypted copy of a symmetric key—a description of *what* the package holds, not *how* it is organized or generated in any structurally novel way. A labeled container with conventional contents is not a self-referential

table, and routing traffic through a membership-controlled server is not an improvement to how computers operate at the level of data organization or memory architecture.

Knossos contends that the '410 patent presents a scenario directly analogous to *BASCOM* because, like the filtering tool installed at a specific ISP server location in that case, the '410 patent's private-domain server sits at a specific intermediate location in the communication path and configures per-recipient security packages in a manner that prior art email systems could not achieve. Opp. at 5–6. This misreads *BASCOM*. The inventive concept in *BASCOM* was the *specific, previously unexploited location*—the ISP server—and the *specific capability* that location alone made possible: individualized user-level content filtering that could not be performed at the end-user device or at a generic server. *BASCOM Global Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016). The '410 patent places a server in the communication path—exactly where SMTP relay and proxy servers have always resided in email systems. There is no structurally new location, and the per-recipient key wrapping that Knossos touts as the resulting novel capability is simply the basic operation of hybrid encryption, which PGP—conventional and conceded as prior art—already performed.

Knossos argues that, just as *Ancora* moved a license verification structure to a specific hardware location (BIOS memory) not previously used for that security purpose, the '410 patent moves electronic messaging to a private-domain transmission architecture not previously used for secure message routing, and that both patents address a technological vulnerability with a specific structural technique that departs from prior approaches. Opp. at 6–7. The parallel does not hold. *Ancora* reversed dismissal because the claims stored verification data in *a specific, previously unused hardware location*—BIOS memory—that rendered circumvention structurally impossible in a way no prior software-based technique could achieve. *Ancora Techs., Inc. v. HTC Am., Inc.*,

3

908 F.3d 1343, 1348 (Fed. Cir. 2018). The structural specificity was the point: BIOS was a concrete, identified hardware component with defined properties that made the claimed approach categorically different from prior art. The '410 patent identifies no analogous previously unused hardware location. A "private domain server" is not a specific hardware component with defined properties that make circumvention structurally impossible; it is a generic server performing membership verification and key distribution—functions that conventional email infrastructure admittedly already performed.

Knossos argues that the '410 patent's "security package" is analogous to the "security profile" upheld in *Finjan* because both are specifically defined technical constructs created through specific steps that enable capabilities the prior art could not provide. Opp. at 7. This comparison obscures the critical distinction. In *Finjan*, the security profile was a novel data structure that *attached behavior-based threat information directly to the downloadable*—enabling a security system to assess and respond to content-specific threats in real time in a way that prior signature-based approaches categorically could not. *Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299, 1304 (Fed. Cir. 2018). The new data structure enabled a new kind of security analysis. The '410 patent's "security package," on the other hand, is rote implementation of hybrid PGP encryption. A conventional encrypted key wrapper is not a novel behavior-based security profile.

Finally, Knossos argues that, just as *SRI Int'l* upheld claims directed to a specific technique for improving computer network security through deployed network monitors that analyzed packets and generated hierarchical reports, the '410 patent's claims recite a specific technique—private-domain routing combined with per-message, per-recipient hybrid cryptography—that similarly improves the security and functionality of electronic messaging networks. Opp. at 7–8. But the claims upheld in *SRI Int'l* were patent-eligible precisely because they described a *specific*

4

*multi-node network monitor architecture*—monitors deployed at multiple distinct network locations feeding a hierarchical intrusion detection system—that improved how networks themselves detected and responded to threats. *SRI Int'l, Inc. v. Cisco Sys., Inc.*, 930 F.3d 1295, 1302 (Fed. Cir. 2019). The court expressly distinguished *Electric Power Group* on the ground that *SRI Int'l's* claims improved the operation of computers and networks themselves, rather than merely using computers as tools to achieve an informational result. *Id.* at 1301. The '410 patent's single conventional server performing membership verification and key distribution does not improve how networks operate; it uses a conventional network to achieve the result of private message delivery. That is precisely the use-of-computers-as-tools pattern that *SRI Int'l* and *Electric Power Group* distinguish from patent-eligible network improvements.

### 3. *The Private Top-Level Domain Does Not Save the Claims*

Knossos argues that the PTLD mechanism—a private address format that standard DNS resolvers cannot route—is a specific technical innovation. Opp. at 3–4, 12–13. But the PTLD feature appears only in dependent claims 6 and 7, not in representative claim 1. And even as to those dependent claims, exploiting the DNS registration framework to create an unresolvable address format is a design choice, not a new routing protocol, cryptographic technique, or computer-functionality improvement. The claim describes what the address does (fails to resolve on the public Internet) rather than how it achieves that result through any non-obvious technical mechanism. This is precisely the result-oriented claiming that *Alice* Step One is designed to filter.

### B. <u>The Claims Contain No Inventive Concept Sufficient to Satisfy *Alice* Step Two</u>

### 1. *The Specification Forecloses Knossos's Combination Argument*

Knossos argues that even if individual elements are conventional, the ordered combination supplies an inventive concept. Opp. at 17–18. *BASCOM* holds that an inventive concept may reside in an "unconventional" arrangement of known components. 827 F.3d at 1350. But *BASCOM*'s

5

combination was inventive because placing the filter at the ISP—rather than the client or server—enabled a capability that no prior arrangement provided. Here, combining conventional registration, conventional membership verification, conventional symmetric encryption, conventional public-key wrapping, and conventional server-mediated routing produces only the predictable result of those conventional steps: a message encrypted using standard techniques and routed through a server. The '410 patent's own specification confirms this. It discloses that each component is interchangeable with any off-the-shelf alternative. A combination that the patentee itself characterizes as consisting of interchangeable, conventional pieces cannot supply an inventive concept. *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208, 225 (2014).

Nor does the combination's functional result amount to anything novel or unconventional. PGP encryption was designed from its inception to be used with message transmission infrastructure—that is the entire purpose for which hybrid public key cryptography was created. And private email domains were a well-known concept at the time of the invention. During prosecution of the '410 patent, a prior art patent was cited that disclosed private address routing within a network, including domain-based group accounts, membership-controlled access, and key-exchange-based encrypted email communications. *See* KNOSSOS-BBL000983–89 (Knossos Prod.)[1]. The combination of PGP encryption with private-domain email routing produces nothing more than the union of two well-established concepts, yielding only the predictable result that each was independently designed to achieve.

Knossos attempts to distract the Court with its granular four-step description of the '410

---

[1] Attached hereto as Exhibit A. The patent prosecution history of the patent-in-suit is a publicly available government record of which the Court may properly take judicial notice and consider when resolving a 12(b)(6) motion. *Integrated Tech. Sys., Inc. v. First Internet Bank of Indiana*, 2017 WL 631195 at *2 (E.D. Tex. Jan. 30, 2017), *report and recommendation adopted*, 2017 WL 617673 (E.D. Tex. Feb. 15, 2017), *aff'd,* 712 F. App'x 1007 (Fed. Cir. 2018); *see also Mark I Marketing Corp. v. R.R. Donnelley & Sons Co.*, 66 F.3d 285, 292 (Fed. Cir. 1995) ("[T]he prosecution history of the [patent-in-suit] is a matter of public record.").

patent's encryption method. Opp. at 4–5; *supra* at 1. But none of these steps establish an inventive advance. They merely redescribe PGP's well-established hybrid encryption model couched in the language of the patent's claims.

### 2. *Berkheimer Does Not Bar Resolution Here*

At *Alice* Step Two, the Court must first remove the abstract idea from the claim, and then "determine whether the ***additional*** elements" add an inventive concept sufficient to transform the claim. *Alice*, 573 U.S. at 217 (emphasis added). Once the abstract idea of sending and managing private electronic communications is stripped away, nothing inventive remains.

Knossos invokes Berkheimer to argue that Step Two raises factual questions that cannot be resolved on a Rule 12(b)(6) motion. *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368–69 (Fed. Cir. 2018). But Berkheimer's protection extends only to "specific" factual allegations; it does not insulate conclusory assertions from dismissal. *Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*, 776 F.3d 1343, 1347–48 (Fed. Cir. 2014); *Simio, LLC v. Flexsim Software Prods., Inc.*, 983 F.3d 1353, 1365 (Fed. Cir. 2020).

The Amended Complaint's key non-conventionality allegation is that "[n]o prior systems combined [the five enumerated elements] in the manner recited in the claims." Am. Compl. ¶60. That is a conclusion, not a factual allegation. It identifies no prior art that was actually considered and found lacking, no technical publication establishing that the combination was novel, and no expert opinion that the arrangement was non-obvious. The prosecution history Knossos cites (Opp. at 17–18) establishes only that the Examiner found the claims patentable over three specific prior art references under § 103. A § 103 patentability determination over specific references does not establish that every claimed element—let alone their combination—was non-routine and non-conventional, which is the separate factual question that *Berkheimer* addresses. *See Berkheimer*,

7

881 F.3d at 1369. And critically, the specification's own disclosure of universal implementation flexibility is intrinsic-record evidence that the combination was conventional. That evidence may be credited on this motion. *Secured Mail*, 873 F.3d at 913.

### C.      The Dependent Claims Do Not Alter the Eligibility Analysis

Knossos argues that claims 5–7, 9, 10, and 15 recite materially different technical features that preclude representative treatment. Opp. at 11–13. Claims 5–7 address formatting (including the PTLD); claim 9 recites conditional routing by address type; claim 10 requires server-mediated storage; and claim 15 adds temporary database entries for non-members. As discussed above, these are design choices within conventional electronic messaging frameworks, not new cryptographic mechanisms, novel routing protocols, or unconventional database architectures. Each claim applies the same abstract idea—private encrypted messaging through a membership-controlled server—in a conventional technological context. That does not create a meaningful distinction for purposes of the § 101 analysis. *Content Extraction*, 776 F.3d at 1348 (representative treatment appropriate where claims are "substantially similar and linked to the same" ineligible concept). Whether a temporary database entry for non-member recipients was "conventional" is a question answered by common sense: relational database entries for new or guest users have been a standard feature of membership-based systems since well before 2004.

### D.      Claim Construction And Discovery Are Unnecessary

Knossos argues that the terms "private domain," "security package," and "private routing address" require construction before the Court can resolve the § 101 question. Opp. at 9–11. That argument does not survive scrutiny. The Federal Circuit has held that claim construction is not a prerequisite to a § 101 ruling. *Content Extraction*, 776 F.3d at 1349. Courts routinely resolve eligibility without formal construction where the claims are directed to ineligible subject matter

under all plausible constructions. *Sanderling Mgmt. Ltd. v. Snap Inc.*, 65 F.4th 698, 703–04 (Fed. Cir. 2023).

Knossos's claim construction argument is also foreclosed by its own prior conduct. Pursuant to the Court's Standing Order on Section 101 motions, the parties were required to confer and submit a joint letter identifying any claim terms for which construction was necessary to resolve the eligibility question. Dkt. 18. In that letter, Knossos did not identify a single term requiring construction, nor did it explain how any particular construction would affect the § 101 analysis. Having had that opportunity and declined to use it, Knossos cannot now manufacture a claim construction dispute in its opposition brief as a basis to delay resolution of a straightforward legal question. The Court's Standing Order exists precisely to surface genuine claim construction disputes before briefing, not to provide a fallback argument after the motion is fully submitted. A party that fails to identify a required construction in the joint letter has forfeited the argument that construction must precede a § 101 ruling.

In any event, even adopting Knossos's narrowest proposed constructions—"private domain" as a server-associated network domain with non-publicly-routable address structures, and "security package" as a per-message symmetric key wrapped in the recipient's public key—the claims remain directed to the abstract idea of private encrypted messaging implemented using known cryptographic techniques. Knossos has not identified any plausible claim construction under which the claims recite a specific, unconventional technical mechanism rather than a functional result. The Court need not engage in formal claim construction before ruling.

Knossos's reliance on *MyMail, Ltd. v. ooVoo, LLC*, 934 F.3d 1373 (Fed. Cir. 2019), is unavailing. *MyMail* required claim construction before a § 101 ruling where the parties disputed whether a claim term was limited to a specific technical implementation or encompassed only

9

conventional functionality. *Id.* at 1379–80. Here, the specification itself discloses that each claimed component may be implemented using any conventional tool, making construction of specific terms irrelevant to the eligibility determination. There is no construction of "security package" or "private domain" that would convert a claim to encrypt-and-route-using-conventional-tools into a specific technical improvement to computer functionality.

Finally, the Court should disregard Knossos's perfunctory request for leave to amend its pleadings—that contention appears only in a subheading and is entirely unsupported by argument. Opp. at 9; *see Magee v. Life Ins. Co. of N. Am.*, 261 F. Supp. 2d 738, 748 n.10 (S.D. Tex. 2003) ("[F]ailure to brief an argument in the district court waives that argument in that court."). Regardless, Knossos has already had one opportunity to amend its complaint, and despite that effort, has failed to show how its claims implement any specific, unconventional technical mechanism rather than the abstract idea of private, encrypted messaging using conventional components. As BlackBerry has demonstrated, the intrinsic record forecloses patentability. Therefore, amendment is futile and should be denied. *See Secured Mail Sols.,* 873 F.3d at 913.

## II.    CONCLUSION

Knossos's Opposition repackages the same functional results described in the claims as "specific technical architecture" but identifies no concrete mechanism that is non-conventional. The specification forecloses any such finding by disclosing universal implementation flexibility. The dependent claims add only routine design choices that apply the same abstract idea in conventional technological contexts. Claim construction is unnecessary because the claims are directed to ineligible subject matter under all plausible constructions. For the foregoing reasons, and those stated in BlackBerry's Motion, BlackBerry respectfully requests that the Court grant the Motion to Dismiss the Amended Complaint with prejudice.

10

Dated: April 7, 2026

Respectfully submitted,

/s/ Jason W. Cook

Jason W. Cook
Lead Attorney
Texas Bar No. 24028537
Samuel B. Rappeport
Texas Bar No. 24149327
McGuireWoods LLP
2601 Olive Street
Suite 2100
Dallas, TX 75201
Telephone: 214-932-6400
Facsimile: 214-273-7483
jcook@mcguirewoods.com
srappeport@mcguirewoods.com

*Counsel for Defendant BlackBerry Limited*

11

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 7, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing to all counsel of record.

By: */s/ Jason W. Cook*